IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re ROBERT ALLEN DICKEY,<br><br>                                            Debtor. | Chapter 13<br><br>Case No.: 2:10-bk-17999-PHX SSC<br><br>(Not for Publication- Electronic Docketing ONLY) |
| QUALITY LOAN SERVICE,<br><br>                                            Movants,<br>v.<br><br>ROBERT ALLEN DICKEY, Debtor;<br>RUSSELL BROWN, Chapter 13 Trustee,<br><br>                                            Respondents. | MEMORANDUM DECISION |

I. PRELIMINARY STATEMENT

On July 27, 2011, this Court conducted a preliminary hearing on the "Motion for Annulment of the Automatic Stay or in the Alternative for Relief from the Automatic Stay" filed by Quality Loan Service Corp. ("Movants"). The Debtor, Robert Allen Dickey, filed an objection to the relief requested. Counsel for the Movants and the Debtor presented oral argument at the preliminary hearing. The Court directed the parties to file supplemental briefs by August 10, 2011, with the matter deemed under advisement as of that date. The Court has now set forth, in this memorandum decision, its findings of fact and conclusions of law. Fed.R. Bankr.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28

1

U.S.C. §§1334 and 157 (West 2011).

## II. FACTUAL DISCUSSION

In December 2006, Robert Allen Dickey, Jr., the Debtor herein, executed a promissory note ("Note") in the original principal amount of $299,500 in favor of Taylor, Bean & Whitaker.[1] On December 14, 2006, the Debtor, as trustor, also executed a deed of trust ("Deed of Trust") on the property located at 5129 N. 6th Street, Phoenix, AZ ("Property"), which secured the Note, and stated that Taylor, Bean & Whitaker Corp, was the lender ("Lender") thereunder.[2] The Mortgage Electronic Registration Systems, Inc., as nominee for the Lender, ("MERS") was named as the beneficiary ("Beneficiary"). The Debtor took sole title to the Property under the terms of the Decree of Dissolution of Marriage.[3] The Property was, and continues to be, the Debtor's residence. The Debtor subsequently defaulted on his obligations under the Note and the Deed of Trust.

On March 4, 2010, a Substitution of Trustee was executed by "Johanna Miller, Authorized Signer, Ocwen Loan Servicing, LLC" ("Ocwen"), which was recorded on March 10, 2010, at 20100203558 of the Maricopa County Records.[4] On March 10, 2010, Quality Loan Service Corp., allegedly acting as the successor trustee under the Deed of Trust, executed and

---

**1.** Quality's Motion for Annulment of the Automatic State, at 2, line 5, Docket Entry No. 77.

**2.** Id. In its Motion, Quality asserts the Note was executed on December 24, 2006, which must be a typographical error, since the Deed of Trust was recorded on December 22, 2006. Although somewhat unusual, the Debtor asserts that the Deed of Trust was dated December 14, 2006, but that he executed the Deed of Trust on December 18, 2006. The Debtor states that the Deed of Trust was recorded on December 22, 2006, at 20061673915 in the Maricopa County Records. See Docket Entry No. 51 in the administrative case, Affidavit of Charles J. Deal, Exhibit 1 thereto.

**3.** Docket Entry No. 51, Debtor's Objection to Motion for Relief from Automatic Stay, Exhibit A thereto; also see Declaration of Bounlet Louvan, dated August 9, 2011, at 3, ¶10, Docket Entry No. 89.

**4.** Docket Entry No. 51, Affidavit of Charles J. Deal, Exhibit 2.

2

recorded a Notice of Trustee's Sale on the Property at 20100203559 in the Maricopa County Records, providing notice that a trustee's sale of the Property would occur on June 10, 2010.[5] The Notice of Trustee's Sale was executed by Paul Johannsson, Assistant Vice President, Quality Loan Service Corporation, and notarized by Chelsea Van Horn.[6] On March 11, 2010, a Corporation Assignment of Deed of Trust ("Assignment") was executed by MERS on behalf of Taylor, Bean & Whitaker, which purported to assign the Deed of Trust from the Lender to Ocwen. This Assignment had an effective date of August 13, 2009.[7] The Assignment of the Deed of Trust was executed by "Scott W. Anderson, Vice President, MERS, Acting Solely as Nominee for Taylor, Bean & Whitaker Mortgage Corp."[8]

On June 9, 2010, a day prior to the Trustee's sale on the Property, the Debtor filed a Chapter 13 petition under the Bankruptcy Code, which was assigned this Case No. 2:10-bk-17999 SSC. The Debtor did not file a notice of filing of bankruptcy petition with the Maricopa County Recorder, which is the County in which the Property is located. Although the Trustee's sale was stayed upon the filing of the Debtor's petition, the Trustee apparently continued the Trustee's sale, from time to time.[9] On July 8, 2010, the Debtor's bankruptcy case was dismissed, but was reinstated on August 9, 2010. No Trustee's sale of the Property occurred while the case was dismissed.

---

**5.** Id. at Exhibit 3.

**6.** Debtor alleges that Ms. Horn is not registered with the Arizona Secretary of State as a Notary. Docket Entry No. 51, Affidavit of Charles J. Deal, Exhibit 4.

**7.** Id. at Exhibit 5.

**8.** Id. The same Scott W. Anderson might have also been a certifying officer for MERS on behalf of, or as nominee for, Ocwen in 2007 and perhaps later. See Debtor's Objection to Motion for Annulment of the Automatic Stay Or In The Alternative For Relief From the Automatic Stay, dated July 25, 2011, Docket Entry No 83.

**9.** July 13, 2011 Declaration of Bounlet Louvan, at 2, ¶7, Docket Entry No. 79 ; and August 10, 2011 Declaration of Bounlet Louvan at 4, ¶18, Docket Entry No. 89.

3

Case 2:10-bk-17999-SSC    Doc 101    Filed 12/12/11    Entered 12/12/11 08:02:26    Desc
Main Document    Page 3 of 14

On November 1, 2010, the Debtor's case was dismissed a second time. On December 13, 2010, the Trustee sold the Property to Gorilla Capital of Maricopa County 29, LLC ("Gorilla") for $162,170.00. Gorilla paid the purchase price for the Property on December 14, 2010. Gorilla recorded the Trustee's Deed Upon Sale, dated January 4, 2006, on January 6, 2011.[10] At the time of the Trustee's sale, the Debtor's application for a loan modification was apparently still pending.

On January 14, 2011, Gorilla filed a motion for relief from the automatic stay, seeking to evict the Debtor from the Property. Notice of the Motion was provided by Gorilla to the Debtors, Gary R. Stickell (Debtors' counsel), Russell Brown, and the U.S. Trustee. On January 25, 2011, the Debtor filed an Objection to the relief requested, and Gorilla requested a preliminary hearing on the matter. On January 26, 2011, the Court conducted a preliminary hearing on the Motion, and took the matter under advisement. On March 8, 2011, the Court entered a decision on the record denying Gorilla's Motion.[11] On June 25, 2011, the Court executed the Order denying Gorilla's Motion for Relief from the Automatic Stay, which also included a provision that the Trustee's Sale needed to be vacated, because Arizona law required that the Trustee's sale be continued if a number of events did not occur in a timely manner.

### III. DISCUSSION

#### A. Procedural and Standing Issues

On June 25, 2011, this Court issued an order denying Gorilla's Motion for Relief from the Automatic Stay, and setting aside the Trustee's Sale, because a number of events did not timely occur under Arizona law. In reviewing the administrative docket in the case, it does **not** appear that Gorilla provided notice to Quality of Gorilla's request for relief. However, Quality's current Motion is entitled a Motion for Annulment or Vacatur of the Automatic Stay, but in reality, the Motion should be more accurately styled as a motion for reconsideration.

---

**10.** Id. at Exhibit 6.

**11.** Docket Entry No. 56.

4

Quality does not fit within the parameters of a motion for reconsideration. Fed. R. Civ. P. 59 lists the grounds for seeking relief as being "any of the reasons for which new trials have heretofore been granted . . ." FRCP 59(a). This section has generally been interpreted to provide three grounds for granting Fed. R. Civ. P. 59 motions: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. Sch. Dist. No. IJ, Multnomah Cnty., Or. v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); In re Gurr, 194 B.R. 474 (Bankr. D .Ariz. 1996). A motion for reconsideration is not specifically contemplated by the Federal Rules. To the extent it is considered by the Court, it is under Fed. R. Civ. P. 59(e) to alter or amend an order or judgment. In re Curry & Sorensen, Inc., 57 B.R. 824, 827 (9th Cir. BAP 1986).

Here, Quality does not point to any newly discovered evidence that would justify reconsideration of the Court's Order. Nor are there any facts related to the Order that are in dispute. Thus, although not directly stated, it appears instead that Quality is challenging the Order as being based on a "manifest error of law," but it was Gorilla, not Quality, that requested relief from the automatic stay that led to this Court's June 25, 2011 Order.

Thus, the Court questions Quality's standing to be heard on this type of dispute between the Debtor and Gorilla. Although generally a fairly easy test to meet, the Court initially questions whether Quality has constitutional standing to be heard on its current Motion. Because federal courts are courts of limited jurisdiction, the court must first determine whether there is constitutional and prudential standing as to the party seeking relief.

Constitutional standing "requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 908 (9th Cir. BAP 2011) (citations omitted). To meet this test, there must be an "injury in fact, causation, and redressability." Id. In determining whether Quality may proceed, Arizona law should be consulted as to the duties, responsibilities, or potential liability of a trustee under a deed of trust. Relevant Arizona law provides as follows:

> The trustee need only be joined as a party in legal actions pertaining to a breach of the trustee's obligation under this chapter or under the deed of trust. Any order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the trust deed or by this chapter. If the trustee is joined as a party in any other action, the trustee is entitled to be immediately dismissed and to recover costs and reasonable attorney fees from the person joining the trust.

A.R.S. § 33-807(E) (West 2011). Since Gorilla requested vacatur of the automatic stay **after** the trustee's sale had been conducted by Quality, it is difficult to imagine how Quality is an interested party in this dispute between Gorilla and the Debtor.[12] Moreover, in a recent decision by the Ninth Circuit, interpreting Arizona law, the Court dismissed the trustee from the underlying action, noting that the trustee had no liability for acting pursuant to the instructions of a beneficiary under a deed of trust. Cervantes v. Countrywide Home Loans, Inc. 656 F.3d 1034 (9th Cir. 2011) ("a trustee . . . has the 'absolute right' under Arizona law 'to rely upon any written direction or information furnished to him by the beneficiary.'" Id. at 1045, citing A.R.S. § 33-820(A)). Thus, the trustee had no obligation to investigate whether its appointment as trustee was proper. Id. Returning to the facts of this case, an injury in fact would be the inability of, or prohibition against, an interested party from exercising its remedies. Quality has articulated no injury in fact, and the Court is unable to discern any.[13]

The Court also concludes that Quality is unable to show prudential standing on this record as to its Motion. Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." Veal, 450 B.R. at 906 (citations omitted). As in Veal, a critical

---

**12.** The Court recognizes that the Debtor has commenced an adversary proceeding against Quality and certain other parties. However, whether the trustee's sale should be reinstated, the liability of the defendants for the actions taken in connection with the voided trustee's sale, and related issues should be addressed in the adversary proceeding. A motion for relief from the automatic stay is a summary proceeding, which solely focuses on the issues set forth under 11 U.S.C. § 362 (West 2011).Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985).

**13.** Because the Court is unable to determine any injury in fact, it need not consider the other elements of causation or redressability.

component of Quality's right to be heard is that it assert "its own legal rights and may not assert the legal rights of others." Id. at 907.

In this matter, Quality has failed to show that it has any interest in the Note or any right to be paid by the Debtor. As set forth in the statement of facts, Quality was appointed a successor trustee under the Deed of Trust. It sold the Property to Gorilla, and Gorilla is currently attempting to evict the Debtor, so that Gorilla may obtain possession of the Property. Qualities duties and responsibilities are limited under Arizona law. It is difficult to picture, nor has Quality articulated a basis, how Quality would be affected by the Court's June 25, 2011 Order. While it is true that there is a dispute between Quality and Gorilla as to whether Quality timely delivered the Trustee's Deed Upon Sale, as required under A.R.S. § 33-811(B),[14] that issue may be more appropriately addressed in the adversary proceeding that is pending between the Debtor and a number of parties, including Quality and Gorilla.

Gorilla, however, requests that the Court once again review its decision and the Order entered on June 25, 2011. The Court may always review its orders, and vacate them if the law or equity so requires. The court may relieve a party from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;

---

**14.** Section 33-811(B) provides, in pertinent part, that a trustee "shall execute and deliver the trustee's deed to the purchaser within seven business days after receipt of payment by the trustee or the trustee's agent made in a form that is satisfactory to the trustee." There is no dispute that Gorilla paid the bid price for the purchase of the Property on December 14, 2010. Seven business days from that date is December 23, 2010. A.R.S. § 33-811(B). However, Quality acknowledges that the Trustee's Deed was "sent" to Gorilla on January 4, 2011, well beyond the seven business days as required under Arizona law. Section 33-810(A) also requires that the Trustee's Deed Upon Sale be recorded in the county in which the Property is located within fifteen business days "after the date of the sale." Id. Using December 14, 2010, the next business day after December 13, 2010 (the Trustee's sale of the Property) as the starting point, the fifteenth business day would have been January 5, 2011, and the Trustee's Deed Upon Sale was not recorded until January 6, 2011. (The Court has assumed in this analysis that December 24 and 31, 2010, were business days, and that December 27, 2010, and January 3, 2011, were holidays.) However, Quality asserts that it was Gorilla that caused the late filing of the Trustee's Deed Upon Sale. These issues may be more appropriately addressed in the adversary proceeding.

7

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the judgment. Bankruptcy courts, as courts of equity, have power to reconsider, modify, or vacate their previous orders so long as no intervening rights have become vested in reliance on orders. In re Lenox, 902 F.2d 737, 739-40 (9th Cir. 1990). Although the bankruptcy rule governing relief from judgment on grounds of mistake, inadvertence, surprise, or excusable neglect, provides that the court may relieve a party from a final order upon motion, it does not prohibit a bankruptcy judge from reviewing, sua sponte, a previous order. In re Cisneros, 994 F.2d 1462, 1466 (9th Cir. 1993). For the reasons set forth hereinafter, the Court sees no basis to amend or alter its June 25, 2011 Order.

### B. Whether the Trustee's Sale Is Valid

Pursuant to A.R.S.§ 33-810(A), a trustee's sale is deemed completed when the bid price is paid. That Subsection provides in relevant part:

> The sale shall be completed on payments by the purchaser of the price bid in a form satisfactory to the trustee. The subsequent execution, delivery and recordation of the trustee's deed as prescribed by § 33–811 are ministerial acts. *If the trustee's deed is recorded in the county in which the trust property is located within fifteen business days after the date of the sale, the trustee's sale is deemed perfected at the appointed date and time of the trustee's sale.*[15]

There are two negative implications discussed by Judge Haines in LR Partners, L.L.C. v. Steiner (In re Steiner), 251 B.R. 137 (Bankr. D. Ariz. 2000). First, after

---

**15.** The Court notes that although Judge Haines discussed the italicized language in the In re Steiner decision, he stated that it was not applicable in his case, because the effective date of the italicized language was not until after the occurrence of all relevant facts in his matter. Id. at 141 n.3.

8

1 acknowledging that the term "completed" is not defined in the Arizona case law, one may
2 conclude that if the sale is deemed "completed on payments by the purchaser of the price bid,"
3 one may imply that the sale is not completed until such payment. Id. at 141.  Second, in
4 designating the subsequent delivery and recordation of the trustee's deed as "ministerial acts,"
5 there is the creation of the negative implication that the payment of the bid price is not a
6 ministerial act, which implies that it is an essential part of the sale process.  Further, it may be
7 argued that the specific inclusion of the distinction between the payment of the bid funds as an
8 essential part of the bid process and the "subsequent execution, delivery and recordation of the
9 trustee's deed as prescribed by section 33-811" as ministerial acts as implying that the
10 completion or validity of the Trustee's sale is not dependant on the completion of these
11 "ministerial acts."  Id.  However, this type of argument does not address the italicized language
12 that was not critical to Judge Haines' decision in Steiner

Clearly there must be some reason for the Arizona legislature to distinguish between the completion of the trustee's sale versus the perfection of said sale.  Indeed a legislature is assumed to act with knowledge of what is already set forth in its laws, and the legislature is deemed to have acted with purpose to be given to each provision; that is, no statutory provision should be read as surplusage.  Beck v. Prupis, 529 U.S. 494, 500-01 (2000); Liv v. Eddy, 324 F.3d 1109, 1110 (9th Cir. 2003) ("[C]ourts interpret statutes so as not to render any section meaningless.") Moreover, the Arizona legislature did not state that the perfection of the trustee's sale would occur if the trustee's deed upon sale was recorded within fifteen business days of the **completion** of the trustee's sale.  Rather, the legislature said perfection occurred fifteen business days "after the date of the sale."  § 33–810(A).  Since it is difficult to track when the bid price will be paid for any property which is sold at a trustee's sale, but the actual trustee's sale or auction date is set forth in the notice of trustee's sale and, hence, is a matter of public record, one would assume that "after the date of the sale" refers to the date set forth in the notice of trustee's sale.  If the trustee's sale is continued, from time to time, the notice of the

9

1 continuance is announced to the public at the time of the sale and is ascertainable from the public
2 record. In determining the effect of the recordation of the trustee's deed upon sale on the
3 sixteenth day, the court, in the decision of In re Stork,, stated:

> [California law] provides that, if a foreclosure sale deed is recorded within fifteen days of a foreclosure sale, the sale is deemed perfected as of 8:00 a.m. on the day of the sale. By necessary implication, if the deed is recorded on the sixteenth day, the sale is deemed perfected when the deed is recorded and is unperfected until then.

212 B.R. 970, 971 (Bankr. N.D. Cal. 1997).

The Stork Court then discussed the implications of having a transaction deemed perfected. Id. 11 U.S.C.§ 362(b)(3) only carves out an exception to the automatic stay as to those acts to perfect an interest in property to the extent that the creditor may defeat the rights of a trustee under 11 U.S.C. § 546(b). In turn, Section 546(b) states that the rights and powers of a trustee under [Section 549][16] are subject to the ability of a creditor to perfect an "interest in property to be effective against an entity that acquires rights in such property before the date of perfection." Put another way, if a creditor takes certain action, allowed under state law, which permits the creditor to defeat the rights of someone who obtains rights in the property *before* the date of perfection, the creditor will defeat not only the powers of the trustee seeking to set aside what the creditor has done, but the action will not be a violation of the automatic stay. From a practical standpoint, these provisions allow a creditor to take action under applicable law to perfect its interest in property, even though the actions related to perfection actually fall after (1) the creditor acquires an interest in property, and (2) a third party subsequently acquires an interest in the same property. It is because the perfection is retroactive to when the creditor first acquires its interest in the property that allows the creditor to defeat the rights of the trustee and

---

**16.** The Subsection actually refers to Sections 544, 545, and 549 of the Bankruptcy Code. However, since the Trustee's sale occurred after the Debtor filed its bankruptcy petition, the Section applicable to the facts of this case would be Section 549 pertaining to transfers that occur after the "commencement of the case" that are not authorized under title 11 or by order of the court.

10

third parties, and becomes a logical exception to the automatic stay. Thus, any such action would not be deemed void pursuant to the analysis of In re Schwartz, 954 F.2d 569 (9th Cir. 1992).

In this matter, the Trustee's Deed Upon Sale was recorded by Gorilla sixteen business days after the Trustee's sale was conducted. As such, the perfection of the Trustee's Deed Upon Sale was January 6, 2011, the sixteenth business day. Thus, Sections 546(b) and 362(b)(3) are not applicable to the actions to perfect the Trustee's Deed Upon Sale. Because the Trustee's Deed Upon Sale was untimely recorded, it is not an exception to the automatic stay.

Does 11 U.S.C. § 549(c), however, serve as an independent basis to deem the Trustee's Sale valid and not a violation of the automatic stay? Section 549 states, in pertinent part:

> (a) Except as provided in subsection . . . (c) of this section, the trustee may avoid a transfer of property of the estate--
> (1) that occurs after the commencement of the case; and . . .
> (2)(B) that is not authorized under this title or by the court.
>
> (c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy of the notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. . . ."

However, Section 549(c) assumes a number of events have already occurred:

> (1) The trustee, or the debtor acting in place of the trustee, has commenced an action to avoid an unauthorized postpetition transfer of an interest in real property that is property of the debtor's bankruptcy estate;
>
> (2) The party against whom the trustee or debtor is proceeding is a good faith purchaser;
>
> (3) The party has no knowledge of the commencement of the debtor's case; and
>
> (4) The party paid present fair equivalent value.

It is conceded that the Debtor did not record a copy of the notice of his petition in

11

1 the Maricopa County Recorder's Office, which is the County in which the Property is located.
2 The timely recordation of the notice by the Debtor would have defeated the rights of any *bona*
3 *fide* purchaser that claimed to purchase the bankruptcy estate property without knowledge of the
4 commencement of the case and for present fair equivalent value.  However, one may not
5 necessarily assume that the converse is true; that is, the failure to record such a notice means that
6 *any* postpetition transaction is somehow valid.  To approve Gorilla's purchase of the Property, at
7 this time, the Court is necessarily assuming, without any factual evidence to support same, that
8 Gorilla is a good faith purchaser, without knowledge of the commencement of the Debtors' case,
9 and paid present fair equivalent value for the Property.  Again, these types of factual findings are
10 not considered as a part of a summary proceeding on a motion for relief from the automatic stay.

11 Moreover, after the Debtor's case was reinstated, which reimposed the automatic
12 stay, the Bankruptcy Noticing Center sent notice of the reinstatement to Ocwen and to Ocwen
13 c/o McCarthy Holthus Levine.[17]  It has been alleged that McCarthy Holthus Levine, or one or
14 more of its partners of said firm, are principals of Quality.  Thus, Ocwen and Quality may have
15 been on notice of the reinstatement of Debtor's case. Did they convey that knowledge to Gorilla?
16 The record is unclear.  Again, such facts would normally be adduced in an adversary proceeding.

17 To the extent that the court, in the decision of In re Stork, held that even though
18 the trustee's deed upon sale was recorded outside the relation-back period of fifteen days
19 provided for under Cal. Civ. Code. § 2924h(c),[18] the purchaser was still protected under 11
20 U.S.C. § 549, this Court disagrees.  The factual record, at least as stated in the Stork decision,
21 does not lead to such a result.  It may be that once this Court has a sufficient evidentiary record,
22 it may come to the same result as in Stork.  However, for now, as set forth above, there are too
23 many factual issues that must be resolved in an adversary proceeding before this Court may take
24 further action.

---

**17.** Docket Entry No. 42.

**18.** Arizona has a similar statute.  *See* A.R.S. § 33-810(A).

12

### C. Whether The Stay Should Be Vacated On This Record

A final issue is whether the Court has sufficient information at this time independently to vacate the automatic stay. Quality filed several declarations with its current Motion. Unfortunately, none of these declarations addresses the current posture of this case.

The Debtor is currently in a Chapter 13 proceeding, and the Chapter 13 Trustee. filed a Trustee Recommendation on July 29, 2011. In that Recommendation, the Trustee expressed concerns on various issues, including an objection to the plan filed by OCWEN Loan Servicing, past due returns due for an HVY Vehicle, the failure to provide 2010 federal/state returns, and missing monthly operating reports from June 2010 to June 2011. On September 1, 2011, the Debtor filed a Motion to Extend the time to respond to the Trustee Recommendations due to the adversary proceeding that is pending regarding the Trustee's Sale.[19]

The Debtor believes that the Property is necessary for his reorganization, since he currently resides at the Property. According to the Debtor's Chapter 13 Plan, he is seeking a loan modification to be paid outside the plan. Until the Loan Modification is approved, or other action is taken thereon, he is paying $1200 a month, which is being held in the trust account of Debtor's counsel. Because of the issues pending in the adversary proceeding, it is unclear whether the Trustee's Sale of the Property should be reinstated, whether Gorilla is a good faith purchaser, and whether Gorilla has paid the fair value of the Property. If Gorilla had constructive notice of the Debtor's bankruptcy proceedings or the reinstatement of Debtor's case, then the Court's decision to set aside the Trustee's Sale will remain valid for other reasons. From the Court's standpoint, until it resolves the issues in the adversary proceeding, it has insufficient facts to determine whether the automatic stay should be vacated at this time

### IV. CONCLUSION

For the reasons stated in this decision, the Motion to Annul the Automatic Stay, or in the alternative, Motion for Relief from the Automatic Stay is denied. The Court will

---

**19.** The Debtor never uploaded a form of order concerning the Motion to Extend time.

13

resolve many of the relevant remaining issues between the Debtor and the other parties in the adversary proceeding that is pending before this Court. The Court will separately set the various motions to dismiss the adversary proceeding for separate hearing.

DATED this 12th day of December, 2011.

_____
Honorable Sarah Sharer Curley
United States Bankruptcy Judge

14